# Exhibit A



**JB Pritzker,** *Governor*     **Illinois Department of Human Services**     **Grace B. Hou,** *Secretary*

100 South Grand Avenue, East ● Springfield, Illinois 62762
401 South Clinton Street ● Chicago, Illinois 60607

June 19, 2020

Misha Tseytlin
Sean T.H. Dutton
Troutman Sanders, LLP
227 West Monroe Street, Suite 3900
Chicago, IL 60606

Re: Community Day Services Letter Dated June 17, 2020

Mr. Tseytlin and Mr. Dutton:

On behalf of the Illinois Department of Human Services and Office of the Governor, we are in receipt of your letter dated June 17, 2020 regarding Mr. J.M., and your position on the current status of Community Day Service ("CDS") providers during the COVID pandemic.

In your letter, you argue that the restrictions currently in place on CDS providers are unwarranted per CDC guidelines, as individuals with disabilities "are not inherently at higher risk for becoming infected with or having severe illness from COVID-19," and that the State has failed to provide any basis for excluding CDS programs from the "Restore Illinois" reopening plan. This is simply not accurate. There is a clear justification for the determination to temporarily restrict CDS operations to prevent COVID infections and complications among Illinois residents with intellectual or developmental disabilities. In recognition of the increased risk to certain subsets of the population at higher risk for COVID infection and serious outcomes, the Illinois Department of Public Health issued specific guidance to temporarily close all adult day programs (see https://www.dph.illinois.gov/topics-services/diseases-and-conditions/diseases-a-z-list/coronavirus/preventing-spread-communities/adult-day-centers), and the Illinois Department on Aging has similarly restricted day programs. While these specific guidelines apply to programs for the elderly, the rationale behind them justifies closure of CDS for individuals with intellectual or developmental disabilities as well.

Your reliance on CDC guidelines for the proposition that COVID-19 poses no higher risk for the disabled is misplaced. The CDC specifically identifies a higher risk for those "who have trouble understanding information or practicing preventative measures, such as hand washing and social distancing…[and] [p]eople who may not be able to communicate symptoms of illness." www.CDC.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-disabilities.html. Furthermore, there is evidence that individuals with intellectual or developmental disabilities are up to four times more likely to become infected with COVID-19, and are roughly twice as likely to die due to a COVID infection. (see Disability & Health Journal, May 2020, finding those with intellectual or developmental disabilities have a 4.5% fatality rate compared to 2.7% for the general population

Misha Tseytlin
Sean T.H. Dutton
June 19, 2020
Page 2 of 3

https://www.disabilityscoop.com/2020/06/08/people-with-developmental-disabilities-more-likely-to-die-from-covid-19/28434/; see NPR article June 9, 2020, identifying infection rate as up to four times higher, and death rate of twice the general population for individuals with intellectual disabilities www.npr.org/2020/06/09/872401607/covid-19-infections-and-deaths-are-higher-among-those-with-intellectual-disabilities.html.)

Due to this increased risk, the temporary restrictions on CDS currently in place are not arbitrary or discriminatory, but instead are based on a clear, rational basis to prevent a high-risk population from infection with COVID-19. The notion that Mr. J.M. should be compared to "[m]anufacturing employees and youth attendees of day camps" ignores the very characteristic that puts both Mr. J.M and others with ID/DD at a substantially higher risk than the general population. While both manufacturing and youth day camps are under certain restrictions in many jurisdictions, including closure from local health departments, limiting day camps to outside activities only, etc., these comparisons miss the overall point that Mr. J.M does not attend programming in a typical manufacturing or day camp environment. CDS (including Community Workshop and Training Center (CWTC)) operations are tailored to individuals with intellectual and developmental disabilities, many of whom have incredible difficulty following instructions, understanding the need for and/or maintaining social distancing, hand washing and the need to wear masks in enclosed environments. Based on the increased risk of individuals with intellectual or developmental disabilities, the CDS restrictions are not at all inconsistent with the Americans with Disabilities Act or the Rehabilitation Act, and do not violate Mr. J.M's Equal Protection rights, but instead are temporary measures taken to further the health and welfare of a particularly vulnerable population.

Furthermore, Illinois is not the only State to enact restrictions on CDS programming for individuals with intellectual or developmental disabilities. A number of states have restricted CDS operations, many of which remain in effect, including but not limited to New York New Jersey, Connecticut, Louisiana, and California (see https://opwdd.ny.gov/coronavirus-guidance; https://www.nj.gov/humanservices/ddd/documents/division-update-COVID19-03132020.pdf; https://www.nj.gov/humanservices/ddd/documents/covid19-temporary-day-funding.pdf).

Based on what we hope to be Illinois' further progress in fighting the pandemic, we anticipate that CDS providers may be able to resume operations by September 1, 2020 (assuming the Restore Illinois plan does not require moving back to more restrictive phases).

We recognize the difficulty faced by individuals such as Mr. J.M., who has attended the CDS program through CWTC for a number of years. However, as noted in your letter, Mr. J.M.'s significant intellectual impairment places him into one of the CDC's identified risk categories, as he is likely unable to understand and/or maintain proper social distancing, hygiene or be able to advise if he is ill.

Misha Tseytlin
Sean T.H. Dutton
June 19, 2020
Page 3 of 3

Please be advised that the Division of Developmental Disabilities continues to have as its highest priority the care and safety of all individuals in Illinois with intellectual or developmental disabilities. The Division and Mr. J.M.'s Individual Service Coordination (ISC) agency have alternate options that may be able to be implemented through Mr. J.M.'s Home-Based Services funding to ensure that he is able to participate in programming to the maximum extent possible under these difficult circumstances. This includes telehealth services for behavioral health, which may help address any challenges brought on by the change in Mr. J.M.'s daily routine. In addition, while not funded by the Division, some providers are providing remote/virtual programming, which the Division can help Mr. J.M. to explore.

We look forward to working with you and Mr. J.M. to identify suitable alternate services and/or supports to assist Mr. J.M. until he can safely return to CWTC.

                                        Sincerely,

                                        /s/ John F. Schomberg

                                        John F. Schomberg
                                        General Counsel
                                        Illinois Department of Human Services
                                        John.Schomberg@Illinois.gov